Your Honor, may I please have the court? My name is Drew Mastey and I'm representing the plaintiff appellants in this matter. And I'd like to reserve three minutes of my time if that's possible. Yes, it certainly is, but please try to watch the clock yourself. I will. Thank you very much. Your Honor, this case comes from the lower court where it was dismissed for lack of subject matter jurisdiction because plaintiffs had not, according to the lower court, exhausted their administrative remedies. Now, in the intervening time between now and then, this court decided the Payne v. Peninsula School District case, which changed the standard for non-IDEA claims having to go through IDEA exhaustion. The court changed it from the so-called injury-centric analysis under Rob to a relief-centered analysis. And now the rule is non-IDEA claims, which are seeking relief not available under the IDEA, need not exhaust IDEA administrative procedures. And in this case, there are categories of relief that are not available under the IDEA that would not be subject to those exhaustion procedures. How long does exhaustion take? If we were to exhaust using the administrative due process procedure, which is like a trial, the timeline set is from the date of complaint to the date of decision, 75 days. However, it often takes a little bit longer than that due to continuances, but the regulatory timeline is 75 days. This case has been pending in our court for, what, six months, eight months? Yes. What's the disadvantage of just exhausting? The disadvantage to going that particular route is, first, it's not necessary because we are challenging a facially unmodeled practice. If you're spending eight or nine months to save 75 days, I don't get what the advantage to you to do that is. Well, the advantage is also just from a tactical standpoint, I guess you could say, is we have numerous plaintiffs that all need the same remedy. And in the administrative procedures, you're not allowed to bring numerous plaintiffs. Every plaintiff would have to do his own case. And so we'd be looking at so far three plaintiffs, potentially more, of all identical cases that would be going forward at the same time. And it would be very difficult to do it that way. Whereas in this proceeding, we would be able to have all the claims heard in one body for one judge and we'd get consistent rulings. You would really have to bring, say, suppose you had 75 individuals. Yes, Your Honor. You would really have to bring 75 individual claims? Suppose the school district wouldn't agree that if you had a ruling on one that it would apply to all? Your Honor, I'm not aware of what the school district would or would not agree to, but the Office of Administrative Hearings, which is the state agency that does the due process complaints, does not allow you to bring more than one student at a time. In fact, you know, even if the children are related or twins or anything like that, they still must maintain separate cases. And that's just how OAH does their hearings. Okay. Well, go back to your argument. Okay. So for those categories of relief that are not available under the IDEA, and we've asked for general and specific damages, much of which is related to economic losses, loss of reputation, emotional distress, those all would not be available under the IDEA. The IDEA does not make those kinds of damages available. And, therefore, they would not be subject to IDEA exhaustion. Can I get back to my question again for a second? Absolutely. This is not a class action, right? No. This is just brought on behalf of three people? Correct. So I didn't quite understand your point then before. Well, Your Honor, part of the... If you had to exhaust, these three would have to exhaust. We're not talking about 75 people. And if you win here, this is not class relief? Correct. Well, part of the difficulty, Your Honor, is we don't know how many students we're even talking about. Through our own personal investigation, we were able to find these three plaintiffs, but there were numerous students that attended the charter school which were closed down, which we have not been able to find or contact. Those enrollment records are maintained by the district, and we would need to begin discovery proceedings and do those sorts of things to potentially find how many plaintiffs we're talking about. I don't know if it's numerous enough to be a class action. So it's not a class action at this point. I guess I'm still at a loss to understand why you didn't just go and exhaust it. You'd be already in district court, maybe have won your case already. That's potentially the case, Your Honor, but we felt that it was important to make sure that it was all heard at once before one judge because the risk of inconsistent decisions is there, and it would just be very duplicative to have the same facts in case after case after case. There's the D word again, duplicative. It occurs to me that one of the policies here is, you know, these people are getting older and not getting the services they need and that kind of thing. Yes, Your Honor. The object here is to try to fix the problem and not the blame. And I can see where, you know, these kids keep getting older without getting what they need because the lawyers are litigating it rather than, you know, taking advantage of whatever remedial remedies could be. I completely understand, Your Honor, and this is something that we've spoken with our clients about and this is ultimately the decision. Has there been any effort to resolve this case? There has been, but just not successfully. What relief can you get by suing in feral court that you couldn't get by exhausting your claims? All of the damage remedies are not available under the IDEA. So all of those remedies would not be available in an administrative proceeding. What would be available in an administrative proceeding are things like make-up services or what the courts sometimes call compensatory education, those sorts of items. And so for those sorts of items, exhaustion is required, and that would take me to my second point is that we have exhausted to the extent required in this case. And the reason is in Hep2V versus Tucson, this court said that IDEA exhaustion has the same exceptions as exhaustion requirements do generally, and that is futility, inadequacy, you don't have to exhaust. And this court came up with a third exception, which is when the challenge is to a policy or a practice of general applicability. And that's what's being challenged here. Now, in Heft they challenged that and the court still turned them down because they said there's still one remaining purpose of exhaustion and that's to put the State on notice of these local policies. Well, a few years later, Christopher S. of Erskine-Sluss County comes on, and in that case they are challenging a policy and they put the State on notice by filing a compliance complaint. So in that case the State has notice of these local policies that are occurring. And this court said exhaustion is not required in that instance. And that's the case that we have here. We are challenging a practice of general applicability. I thought you agreed that some of the MADI students did re-enroll. Well, not in Long Beach. I mean, there's been some that have moved out of the school district and some that have attempted to enroll in alternative education programs, but they haven't been re-enrolled by Long Beach, by the school district. And the school district has not provided them the services they need to receive an appropriate education under the IDEA or under 504 or under the ADA. Well, your allegation is that there is a policy, but there hasn't been any determination of that. Correct. So our allegation is that there is a practice of general applicability, and at least at this time we're not aware that it's a written policy, but it was a general practice that occurred in the lower court. And that's really the issue, isn't it, whether there is a policy or not? Correct. Absolutely. Yes, and that it is unlawful. Did you file a compliance complaint? A compliance complaint was filed, not by any of the three plaintiffs, but the state was put on notice. One of the three plaintiffs, H.W., also filed a complaint with the Office of Civil Rights, and that OCR complaint also put the state on notice. So the state has been put on notice by two different administrative procedures. And just as in Christopher S., in that case there were three plaintiffs, one of whom had put the state on notice through a compliance complaint, and all three were allowed to maintain their claims. Similarly here we have three plaintiffs, and there's been a compliance complaint filed, and one of these three plaintiffs has filed the OCR complaint, and so all three should be able to maintain their claims. How old are the plaintiffs now? At this point, they would all be between the ages of 19 and 20 or 21. So are they now aged out of eligibility for services under the IDEA? No, Your Honor. In California, children remain generally eligible for IDEA services until either they graduate with a formal diploma, not a GED, but a high school diploma, or generally they turn to 22. It depends on when their birthday is, but usually 22 is the age out. So when it comes to exhaustion, my clients have taken the steps necessary to put the state on notice and have challenged this facially invalid practice of closing down this charter school and then just failing, or in some cases refusing, to re-enroll those children into the school programs and to provide the services that are necessary under the ADA 504 and the IDEA to give them that appropriate education. Now, Your Honor is absolutely correct that at the lower court the district denied that there was such a policy, but the experience of the plaintiffs demonstrates that there was such a practice occurring. Plus, in this case, this is a case where all of the documents and all of the records and all of the people who are involved are under the control of the defendants. The enrollment records are under control. The educational records are under control. The declarants that were provided at the lower court are employee declarants of the defendant. And without reasonable tools of discovery, my clients are essentially without the ability to, you know, to contest the district's denial. We need those records and those documents in order to. . . But you could do all of that if you first exhaust and then wind up back in court, couldn't you? In that case, actually no, Your Honor, because one of the other reasons that exhaustion would be more, or the due process would be more difficult is because there is no discovery in an administrative due process proceeding. No, I know, but if it doesn't resolve to your satisfaction, you're back in district court. You're off and running again. That is true, Your Honor, but. . . The only question is whether you have to go to administrative proceedings first. Correct. And if they fix the problem, then the problem's fixed. And if it's not fixed to your satisfaction, you're back in court. Well, I think, Your Honor, what may be missing is procedurally, since we don't have that discovery in the administrative process, we would not be able to put on the same kind of case that we could in district court. Okay, but then you will have exhausted and you will be back in court. And the second part of that is once that kind of a decision is appealed to a district court, the district court has to give deference to the lower court. They're not necessarily free to look at it de novo, and so that means the district court would look at the record and make their decision based on that record. So they sit in almost an appellate capacity, and therefore we still would likely be unable to obtain those items that we need through discovery. I see. I'm at about 2.45 if I can reserve the rest of my time. We'll give you three minutes. Thank you. Good morning, Your Honors. May it please the Court. I'm John Allen on behalf of Long Beach Unified School District, and I'd like to start by addressing the exhaustion argument. Let me ask you one simple question to see if I understand this. Why is it that a challenge to a rule or a policy is not under, I guess, it's whatever Stephan has or whatever the case is, Christopher has. Why isn't the challenge to the practice, which is a policy, whatever it is, which is the issue in the case, why isn't that exhaustion? Why isn't that the exception to exhaustion that we've recognized? It's a narrow exception under the Christopher S. case, and Judge Otero found below that the evidence established, number one, that most of the MATI students, the closed charter school students, were contacted by the district in order to reenroll. And he also found that that was before discovery, right? It was on a motion to dismiss, a 12-1. But the motion to dismiss presented the same issue as the merits issue? It was a 12-1 motion to dismiss for lack of jurisdiction prior to the Payne court ruling that an unenumerated motion is the proper method to challenge. So what I'm saying is it's a procedure that Judge Otero filed, unlike summary judgment, where the party who's challenging the policy can't discover anything. It is. It's at the beginning of the case. Now, the plaintiffs, even in their opening brief before this Court, have said there's almost a dozen other such students. There was no evidence to support that claim, either presented below or here. No, there's no evidence at all. But there is declarations from two school district employees regarding what they did when this charter school closed in September of a school year. They attempted to contact all the students. And, in fact, they did contact two of the students herein. I still don't understand why. I mean, a similar rule is that if two things, one, if you're attacking a general policy or procedure, writing or not, and that's an exception to the exhaustion. And they say they're attacking the general policy. Secondly, that where the issue and the initial procedural thing, as it was there, and it's now almost the same. It's treated the way it was. It doesn't matter. Either way, if that's the same as the merits or it's intertwined with the merits, our rule is you don't decide it until you at least have summary judgment. Well, Your Honor, the issue before the trial court was whether there was a practice or policy to create the exception under Christopher S. In Christopher S., the school district admitted all students in the autism program had Tuesday afternoons off. Here. Well, why does it depend on what the school district admits? What I think Judge Reinhart finds troubling, and I do, too, is that only one side had evidence. And there was no way to contest that evidence. Your Honor, there was. The plaintiff had an opportunity to respond to the brief. There was notice given in the motion to dismiss that declarations were filed concurrently. The plaintiff is saying all these other students exist in this potential class, but there's never been any evidence whatsoever of that. It's an assertion. But the evidence was what was presented by the district. If you did a motion to summary judgment, then they would either have to come up with the evidence through discovery, or they wouldn't. I mean, they may not ever be able to come up with it. But when it's summary judgment, they've had their chance. Here, as I said, it may be of an answer to it. Well, Your Honor. They say the evidence comes from the district, from their employees, but we can't question them. We can't ask them anything. They just make statements. Well, compliance with the exhaustion requirement is something the plaintiff has the burden of proof on. They can assert it that they're excused in the pleading, but the defendant can put in evidence under Rule 12b-1 or an unenumerated Rule 12 motion setting forth what the facts are. And that is exactly what happened, and Judge Otero found that those facts were true and that, therefore, Long Beach Unified School District does not have a policy or practice of closing charter schools in September and letting all the students run free. Judge Otero is citing to a declaration of somebody named Suttles? Yes. Who submitted that? The defendant submitted that. The defendant submitted both declarations. And Hammond's declaration? As well, the defendant. And he quotes that, or not quotes it, but refers to it, and then he says something along the lines of the plaintiff's never refuted any of that. Is that true? That is true. In opposition, the plaintiff filed a request for judicial notice, but not separate declarations to establish even, for example, that the three plaintiffs herein knew of other classmates. I'm just going to put myself in Judge Otero's shoes to figure out what happened here. You folks came up with affidavits that says this is not a policy and you gave your reasons why. Correct. They filed an opposition but didn't have anything to refute it, and he says, well, it's not refuted. That's his logic anyway. That's correct. But exactly as the Court points out, there was nothing, nothing whatsoever in terms of evidence in opposition. Somehow Plaintiff's counsel believes that there are up to 12 other people in a similar situation. That could have been put in the opposition brief, that that number is based upon the plaintiffs telling Plaintiff's counsel that they know of approximately 10 to 12 other students who are similarly situated. But even then, that would not establish a practice or policy because Judge Otero believed the declaration's statements that these three plaintiffs were contacted or attempts were made to contact them to reenroll them. Well, see, this is my problem. Maybe I haven't made it specific. The rule is that where the jurisdictional issue, which this was at the time, but it's no different from the other unenumerated, where the jurisdictional issue and substantive issues, which is their main complaint in this case, are they, you know, was there a policy or not? If there isn't, you win. If there is, then they have the exemption. Where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination on the relevant facts on either a motion going to the merits or at trial. Now, that was written by a great judge 30 years ago in this Court. Well, Your Honor. Well, some wouldn't think he's so great. But, I mean, this is what the whole purpose, I think, was supposed to be, that where there's a factual dispute over the substantive issue and you're saying, well, Judge Kagan, I'm not sure I'm going to be able to get to the merits because I don't know the facts.  I'm not going to be able to get to the merits, which are all within your knowledge. But if it's also the issue on the merits, which it is here, it seems to me, they have a policy that it shouldn't be dismissed just on the basis of one side, but that I'd have to just get to a summary judgment where the other side has a chance to question those witnesses of yours who know the facts. Well, Your Honor, first, the rules allow both sides to put in evidence at this stage of the proceedings on this type of motion, whether it's the pre-paying decision or the post-paying decision. We don't have a conflict of facts. We have an assertion, an attempt to establish what I think the Court can take judicial notice of, that school districts don't have a policy to close charter schools and essentially expel all the students in the September of a school year. At most, there were some who slipped through the cracks in various individual ways, such as these three plaintiffs are alleging they did. But that does not establish that the school district adopted a practice or policy of ---- It doesn't. You know, and I wouldn't be surprised if you were absolutely right on the merits if you didn't have a policy. It wouldn't surprise me. Only talking about what the procedure is to arrive at that kind of decision, and it seems to me that the rule that we have is that where that's the issue, that it should be decided on a motion going to the merits, it says, or at a trial. But it clearly says it can be done at summary judgment where they have a chance to discover the facts. And I don't think it would take long if what you're saying is correct. Judge Otero could have established a schedule for summary judgment. Then you would have been making the same argument and you would have said you're right. The only question to me in this case is whether you can do this at a motion to dismiss like this or at a motion for lack of jurisdiction or whether it should be done at summary judgment. I mean, I'm just speaking for myself, not for anyone else. And that's what bothers me. So, and as I said, you know, summary judgment, Ted Silverman keeps asking about, well, where would we have been if we had done this? You know, if we had had summary judgment, it probably wouldn't have taken too long with an expedited schedule, and we wouldn't have had to be here at all. Well, Your Honor, certainly Plaintiff's counsel could have raised that in opposition to the motion to dismiss or at least objected in the trial court to the declarations on the grounds raised in the opening brief on appeal. I was just going to ask you, was there an objection to these, to either Suttle's or Hammond's declarations? No. The Court took the matter under submission and no objection was filed in the opposition brief to those declarations. So if the Court believes that hearing on the merits would be more, create a fuller record, Plaintiff's counsel could have asked for that in opposition or could have asked that the briefing schedule in this actual motion be extended so as to allow some sort of pre-hearing discovery, and no such request was made. Jurisdictional discovery. Jurisdictional discovery on that issue only. So would it have been sufficient, say, if there was a declaration by H.W. that he was aware of other students who had not been re-enrolled elsewhere and had not received the services they were entitled to under the IDEA? Would that have been sufficient to have you stay in the district court? I believe that would create a tribal issue of fact, and I also believe on an unenumerated 12b motion that the Court can weigh the evidence and find which it finds more credible, and the Court could have ruled that it found the district's argument or statements and declarations that it does not have a policy of expelling students who are attending a school that's closed more credible than the statements of one of the plaintiffs that he knows of some other unnamed students. Why would another unnamed student, why would four be any better than three? I think the number of students establishes whether this was a practice or policy on the part of the district as opposed to simply a whole charter school shut down and a few people, despite the best efforts of the district, fall through the cracks and are not re-enrolled, particularly when in this case they're adult students as opposed to children. And I would like to point out on the whole issue of exhaustion, the ADA and the Section 504 claims, those have to be seen as piggybacking on the back of the IDEA claim because these are adult plaintiffs. Any rights they claim to discrimination have to depend upon the IDEA's giving educational rights to 18- to 22-year-olds as they were at all times since the filing of the complaint. There wouldn't be any other discrimination under the ADA or Section 504 but for their claim that IDEA rights were violated. And under the language in pain, for example, if a complaint can stand on its own without reference to the IDEA, exhaustion is not required. Clearly here there would be no claim for relief. None of the three could stand without reference to the rights provided by the IDEA and, therefore, exhaustion is required. If it were to go back for administrative exhaustion, what could theoretically what could these plaintiffs get? Well, Your Honor, it's not in the record, but the all three did file for due process and each one was dismissed, I believe, because none of the plaintiffs showed up for the due process procedure. So the OAH did go forward with claims filed around the time of the motion to dismiss and the plaintiffs did not pursue them. So then what happens then? They're dismissed without prejudice and the clock is... Have they exhausted? I mean, is that exhaustion? Are they able to... No. Dismissal on a procedural ground such as that does not constitute exhaustion. So they'd be dead in the water. Correct. Well, if it's without prejudice, they could go back and try to exhaust again. Within certain time frames. Are they precluded by the length of time now? I haven't looked that up, Your Honor. This actually isn't in the record, but as the representative of the district, that's my understanding of what happened. So now I'm saying do they have any remedies available to them at all at this point administratively? I don't believe so. The dates of the dismissal were, one was November 2010, one was April 2011, and for WW, I don't have the date that it was dismissed. What's the period of time within which they can go back? Is it a year? Your Honor, I'm sorry, that escapes me. Let me ask you just one other question. The complaint alleges in Paragraph 21 that the Office of Civil Rights found the district out of compliance for failure to educate or enroll the Maddie children in any district program. Is that true? I believe what it found was that the child or the student bringing the complaint was not being educated, and therefore the district was out of compliance with IDEA for its failure to educate that student. I don't believe there's ever been a finding that there was a practice or policy on the part of the district not to educate students from a school that had been closed. Thank you, counsel. Thank you. Let me start by asking you a question that's been discussed here. When this procedure went out on the district court, was there any objection to the procedure and to its decision on the basis it was decided? Your Honors, the matter was taken under submission. It was done completely by motion. So there wasn't an opportunity at a hearing or otherwise to raise that objection. And further under the ---- But you filed in opposition to their motion. Yes. Did you object to their having submitted Suttles and Hammond's declarations? We challenged the sufficiency of those declarations, but I don't believe there was an objection saying these are improper. And did you submit anything of your own? We had nothing to submit, Your Honor, because discovery had not been made. Well, I don't know. You don't have to have discovery to have declarations of your own clients, but I take it the answer was they came up with stuff and you didn't come up with anything to refute it. Correct. We had nothing. And then after the judge made his decision, you didn't say there was something wrong with the procedure, reconsider it or something like that? Well, we filed the appeal. Back to my question, you didn't ask him to reconsider it because he had used the wrong procedure? No, Your Honor. What did the OCR actually find? Do you have the OCR document? I don't have it, Your Honor. I believe that it found that the non-enrollment ---- and if I recall correctly, and I'm not sure that I do, but I believe that H.W. was one of several children that filed on that OCR complaint and as to each of them, the OCR found that the district was out of compliance. Did you put that finding into evidence before the district court? No, Your Honor. Mr. Allen says there were hearings scheduled for your clients, administrative hearings, and your folks didn't show up and they lost by default more or less, putting words in his mouth, but I think that's what I understood him to say. Yes, Your Honor. Any comment on that? Your Honor, just that those were filed in an abundance of caution and then after the appeal was filed, it was decided that that would be the road to take rather than, again, filing hearing after hearing after hearing. And now you're precluded because of the length of time since the dismissal from exhausting? Correct. The statute of limitations is two years. How does that protect your client to file these things and then not show up? So you cited an abundance of caution. How does that work to your advantage to file it and then not pursue it and lose? I don't think it, frankly, Your Honor, I don't think it does work to our advantage. I think that that was done just as an immediate response and then after further consideration the appeal was the method that was chosen. Got you. Do you have another? I wanted to respond to one thing quickly, but if you have a question I can. No, go ahead. With regard to the district's argument that the ADA and 504 claims piggyback off of the IDEA, that's not accurate. The ADA and 504 are independent bases for which recovery is allowed and both of which have sections involving education and the 504 has sections talking about the free appropriate public education that must be provided to individuals. And all of these individuals have not yet had a high school diploma at the time that they were not enrolled and would be, if none of them were IDEA eligible, they would still have their 504 and ADA claims to pursue. So even if this Court determines that the IDEA claims have not been exhausted appropriately, although we can know that they were, then the 504 and ADA claims would still be independent bases and should not be subject to IDEA exhaustion. Did you make that argument to the district court? That argument was not available because pain had not yet been decided. At the time of the district court we were still focused on the injury-centered test, which would have precluded everything. So that argument wasn't available. In the time between then and the filing, or as the appeal continued, this Court decided pain and that gave rise to this new line of argument. Thank you, counsel. Thank you very much. The case is adjourned. It will be submitted. The Court will stand in recess for the day.
judges: Reinhardt, Silverman, Wardlaw